UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIE STEELE,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                Defendant.

CASE NO. C18-0019-MAT

ORDER  RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff Julie Steele proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1970.[1]  She graduated high school, attended vocational

---

[1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

training, and obtained a cosmetology license.  (AR 45.)  Plaintiff previously worked as a check cashier, customer service representative, and hair stylist.  (AR 64-65.)

Plaintiff protectively filed an application for DIB in March 2013, alleging disability beginning June 28, 2011, and protectively filed for SSI in January 2015, alleging disability beginning July 24, 2012.  (AR 184, 200.)  The applications were denied at the initial level and on reconsideration.

On January 13, 2016, ALJ Ilene Sloan held a hearing, taking testimony from plaintiff and a vocational expert (VE).  (AR 39-70.)  On April 26, 2016, the ALJ issued a decision finding plaintiff not disabled.  (AR 11-32.)  The ALJ declined to open a prior DIB application denied on January 29, 2013.  As a result, the period under review for the DIB and SSI applications under consideration began on January 30, 2013.  (AR 11.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on November 7, 2017 (AR 1), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found the following impairments severe: fibromyalgia, obesity, Sjogren's syndrome, cervical degenerative disc

ORDER
PAGE - 2

disease, depression, and anxiety (alternatively referred to as post-traumatic stress disorder). Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except that she can never climb ladders, ropes, or scaffolds; occasionally balance, stoop, crouch, crawl, and climb ramps and stairs; frequently kneel; understand, remember, and carry out simple, routine tasks, as well as some complex tasks; and she must avoid more than occasional exposure to extreme heat, wetness, humidity, vibration, fumes, odors, gases, poor ventilation, and workplace hazards. With that assessment, the ALJ found plaintiff able to perform her past relevant work as a check cashier and customer service representative.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ also found plaintiff capable of performing other jobs, such as work as a document preparer, final assembler, and phone solicitor.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial

evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in assessing medical opinions and lay testimony, and failed to meet her burden at steps four and five. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

Medical Opinion Evidence

Plaintiff maintains error in the ALJ's assessment of medical opinions from treating physician Dr. Brent Whitehead, examining psychologists Dr. Ellen Walker and Dr. Douglas Uhl, and medical assistant Eric Papritz. In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Because the record in this case contained contradictory physician opinions, the ALJ was required to give "'specific and legitimate reasons' supported by substantial evidence in the record" for rejecting the opinions of Drs. Whitehead, Walker, and Uhl. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The opinions of Papritz were entitled to less weight, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and could be rejected with germane reasons, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A.    Dr. Brent Whitehead

In October 2014, Dr. Whitehead assessed plaintiff as able to sit for four hours and

ORDER
PAGE - 4

stand/walk for three hours in an eight-hour day, able to occasionally lift up to ten pounds, limited in various other respects, and suffering from fatigue, but not fatigue disabling to the extent it prevented full time work. (AR 716-17.) He also opined plaintiff's severe pain, due to fibromyalgia, auto immune disorder, and neck surgery, would prevent her from performing even sedentary work, and precluded the attention and concentration required for even simple, unskilled work tasks. (AR 718-19.) In December 2014, Dr. Whitehead assigned more severe physical limitations, including the ability to sit, stand, or walk only one hour in an eight-hour day. (AR 549-52; *accord* AR 556-58 (December 2014 opinions submitted to insurance).) He identified fatigue due to fibromyalgia, depression, and anxiety and pain due to fibromyalgia, deemed the fatigue and pain disabling to the extent they prevented even sedentary full time work, and again found the pain to preclude even simple, unskilled work tasks. (AR 550-52.)

The ALJ found Dr. Whitehead's "severely restrictive" opinions largely based on plaintiff's subjective reporting of her fibromyalgia and Sjogren's syndrome symptoms, and not reasonable given the objective medical evidence. (AR 27.) "For example, although Dr. Whitehead's treatment notes usually depict the claimant as reporting fatigue symptoms, the claimant did not regularly make fatigue complaints with other medical providers, and her various descriptions of her daily activities are inconsistent with significant fatigue symptoms." (*Id*. (citations omitted).) The ALJ pointed to an August 2013 report of "'working out 3 days per week at her gym with a good program and a trainer'", a March 2015 report plaintiff was "'hopeful to start a walking program'", and other mentions of visiting a gym. (*Id*. (citations omitted).) The ALJ also pointed to the observation of non-examining physician Dr. Douglas Haselwood that "Dr. Whitehead's assessment of the claimant's severely restrictive limitations from fatigue 'is based entirely on self-assertion' on the part of the claimant, as he 'did not determine any measurably defined

ORDER
PAGE - 5

pathophysiologic mechanisms to account for' her perceptions of severe fatigue." (*Id*. (citing AR 843).) She gave the opinions of Dr. Whitehead little weight, deeming them ultimately inconsistent with the totality of the medical and nonmedical evidence, and "more consistent with the profile of a physician who is advocating for his patient." (*Id*.)

An ALJ may discount a physician's opinion to the extent it relies to a large extent on the properly discounted self-reporting of a claimant, where it lacks the support of objective medical evidence, and/or based on inconsistency with the evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), and *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008).

The examples proffered by the ALJ in support of her conclusion do not withstand scrutiny. As plaintiff observes, in many of the instances in which she failed to complain of fatigue, she was seeking treatment for unrelated, at times acute medical issues. (*See, e.g.*, AR 502, 516, 534 (abdominal discomfort/pain), AR 505 (excess skin from bariatric surgery and ankle sprain), AR 529-30 (head cold), AR 700 (chest pain and leg swelling), AR 721 (hernia, abdominal pain, vomiting), AR 724 (abdominal pain, anorexia, nausea), and AR 845 (abdominal pain, vomiting).) It is not surprising plaintiff was consistently asked about and complained of fatigue to her primary care provider, but not in all instances in which she sought medical care. The ALJ also failed to acknowledge numerous instances in which plaintiff did report fatigue to other medical providers. (AR 432, 472, 496, 663-65, 670, 675, 807; *see also* AR 508 ("She does appear tired and in some discomfort."); AR 532 (sleep disturbance).)

The ALJ's reliance on evidence of exercise is also problematic. As recognized elsewhere

in the ALJ's decision, Dr. Margaret Kinsella, a rheumatologist, identified exercise as a beneficial treatment for fibromyalgia. (AR 26, 497 ("She is cautioned that not moving her limbs will create more disability in the future. . . . She is advised to start movement program with the support of PT at south campus, fibromyalgia pathway. . . . Studies show people with fibromyalgia do best if they can get more sleep, exercise and get counseling.")) Other medical providers similarly recommended exercise. (*See* AR 507 (August 2013: working out three days a week at her gym with a good program and a trainer; advised to try yoga and start physical therapy for worsening fibromyalgia pain); AR 698 (March 2015: "[S]he is describing symptoms of head to toe pain being unable to get out of bed at times. She does recognize the importance of exercise and is working with her primary care provider to qualify for pool therapy."); AR 615 (May 2015: "Back in gym[,] getting some exercise.")) The ALJ, in fact, stated plaintiff appeared to have "engaged in only sporadic exercise" since the alleged onset date, and found the failure to adhere to the recommendation to exercise to suggest her fibromyalgia symptoms were not as severe as she alleged. (AR 26.) The ALJ did not reasonably rely on this same evidence of sporadic exercise as contradictory to the opinions of Dr. Whitehead.

The ALJ did, on the other hand, properly consider the contradictory opinion evidence from non-examining physician Dr. Haselwood. *See Morgan v. Comm'r of the SSA*, 169 F.3d 595, 602 (9th Cir. 1999) (ALJ may reject the opinion of a treating or examining physician "based, *in part* on the testimony of a nontreating, nonexamining medical advisor."); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) ("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."). Contrary to plaintiff's contention, the ALJ did not unreasonably favor the opinion of a reviewing physician who relied upon the same or less information than the treating physician. Dr. Haselwood's report

reflects his consideration of records from numerous medical sources. (AR 837-44.) Dr. Haselwood was, moreover, aware that Dr. Whitehead considered both physical and mental impairments in offering his opinion, and similarly acknowledged the impact of plaintiff's mental health issues on her functioning. (AR 839.) Also, neither Dr. Haselwood, nor the ALJ improperly rejected the fibromyalgia diagnosis based on an absence of objective support. *See Revels v. Berryhill*, 874 F.3d 648, 658, 663-64 (9th Cir. 2017); Social Security Ruling (SSR) 12-p. The ALJ instead reasonably considered Dr. Haselwood's opinion of deficiencies in the evidence from Dr. Whitehead. (AR 27; AR 841 ("Unfortunately, Dr. Whitehead, . . . , did not adequately document the rationale or algorithm that he used to independently diagnose the syndrome of fibromyalgia or Sjogren's syndrome or the measurable clinical or physical evidence of impairments, musculoskeletal or otherwise, that these diagnoses would permanently preclude Ms. Steele from at least a sedentary level of physical vocational functionality."))

Taken as a whole, the Court finds the above-described errors to undermine the substantial evidence support for the ALJ's conclusion. The ALJ should reconsider the opinions of Dr. Whitehead on remand.

B.      Dr. Ellen Walker

Dr. Walker conducted a consultative psychological examination of plaintiff in October 2013. (AR 537-39.) Plaintiff appeared cognitively bright, "but her physical health issues are having a significant impact on her ability to be independent and productive in daily life." (AR 539.) Plaintiff would have difficulty focusing and filtering out distractions on the job because of her chronic pain and low energy, ought to have no difficulty with simple instructions, but would have difficulty with more complex instructions due to poor focus, has excellent interpersonal skills and has worked effectively with the public in the past, and would not have difficulty accepting

instructions from supervisors. Plaintiff would still have trouble consistently getting to and staying at work, and her ability to maintain regular work attendance is markedly impaired. She would not have difficulty responding to changes in the workplace, should not have trouble with awareness of workplace hazards and could take precautions on her own, can travel alone in unfamiliar places and use public transportation, sets goals for herself, and makes basic plans independently of others.

The ALJ gave great weight to Dr. Walker's opinion of unlimited ability to accept instructions from supervisors, finding it supported by the balance of the evidence, including plaintiff's own statements provided in a function report. (AR 28.) The ALJ gave the remainder of the opinions of Dr. Walker little weight, finding inconsistency with the balance of the medical evidence. "In particular, her restrictive assessment of the claimant's ability to maintain workplace attendance is largely based upon the claimant's subjective descriptions of her past medical and personal history." (*Id.*) On mental status examination (MSE), Dr. Walker found plaintiff able to perform serial threes, complete a three-step command, and follow a conversation easily. Also, by her own acknowledgement, plaintiff had not engaged in any mental health counseling until November 2014, over a year after Dr. Walker's evaluation. (*See* AR 560, 629.)

The ALJ reasonably construed the opinions of Dr. Walker as relying in significant part on plaintiff's properly discounted subjective reporting. *Tommasetti*, 533 F.3d at 1041. The only abnormal observation or result on MSE included a depressed affect. (*See* AR 538 (arrived early and drove herself; neatly groomed; normal speech; fully oriented; named current and past presidents; recalled 3 of 3 objects after 5 minutes, and 5 digits forward and 4 backwards; followed three-step command and conversation easily; named border states; completed serial 3s to 40 with no errors; correctly spelled world forward and backwards; easily differentiated left from right; abstract verbal reasoning skills estimated as average).) Dr. Walker explicitly considered plaintiff's

reporting regarding her physical impairments and her prior employment in rendering his opinions. (*See* AR 539.)

The ALJ also rationally construed the opinions of Dr. Walker as inconsistent with the remainder of the record. *See Tommasetti*, 533 F.3 at 1041 (ALJ properly considers inconsistency with the record), and *Morgan*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") The conclusion finds the support of substantial evidence in the ALJ's earlier discussion of the medical evidence associated with plaintiff's mental health impairments. (*See* AR 20-21 (summarizing evidence and concluding that, while plaintiff had occasionally presented with a depressed mood and affect, she has generally exhibited normal mood, affect, and/or behavior during numerous medical visits, has been specifically assessed with normal judgment, insight, and thought content over multiple exams, and, while the objective findings and chronic pain symptoms reasonably support a limitation to simple, routine and some complex tasks, they do not support allegations of entirely disabling mental symptoms); *see also* AR 28-29 (addressing contrary opinions of non-examining State agency psychologists and consulting psychiatrist).)

The ALJ, finally, drew a reasonable inference in contrasting the opinions of Dr. Walker with the absence of mental health treatment for a considerable period of time. *See generally Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld. In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.") (cited sources omitted). However, on remand, the ALJ should consider any reasons for plaintiff's failure to seek treatment. *See* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not

comply with treatment or seek treatment consistent with the degree of his or her complaints.");

*Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'") (quoting *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

C.      Dr. Douglas Uhl

Dr. Uhl conducted a psychological examination of plaintiff in December 2014. (AR 560-69.) He assessed plaintiff as moderately limited in relation to very short and simple instructions and markedly limited in relation to detailed instructions, the ability to learn new tasks, perform routine tasks without special supervision, adapt to changes, make simple work-related decisions, and be aware of normal hazards and take precautions. (AR 562.) He found plaintiff severely restricted in the ability to perform activities within a schedule, maintain regular attendance and be punctual, ask simple questions and request assistance, communicate and perform effectively, complete a normal workday and week without interruptions, maintain appropriate behavior, and set realistic goals and plan independently. (*Id.*)

The ALJ gave Dr. Uhl's "overly-restrictive" opinions little weight, finding them inadequately explained and otherwise inconsistent with the balance of the medical evidence. (AR 29.) "In particular, the claimant's generally normal [MSE] findings over numerous medical visits both prior to and after Dr. Uhl's December 2014 evaluation . . . are contrary to Dr. Uhl's objective exam findings and assessments." (*Id.* (citing AR 399, 597, 599, 612, 615, 617, 664, 668, 678, 681, 683, 685, 694, 699.)) The ALJ found the opinion inconsistent with plaintiff's "ability to drive, work out at a gym 3-4 days a week, play solitaire, prepare simple meals, pay bills, use a computer

to communicate with others, and spend time with friends." (*Id*.) She noted the assessment was a one-time evaluation, rendered on a check-box form, with no explanations provided.

The ALJ reasonably found inconsistency between the opinions of Dr. Uhl and the balance of the record. *Tommasetti*, 533 F.3 at 1041. For example, in addition to the numerous normal MSE findings throughout the record, there were stark differences in the comprehensive MSEs conducted by Drs. Walker and Uhl. (*Compare* AR 538 (described *supra* at 9-10), *with* AR 563-64 (speech very angry and demanding at first, demanding and pleading attitude, depressed, fearful and hostile mood, labile affect; finding thought process, orientation, perception, memory, concentration, abstract thought, and insight and judgment not within normal limits; plaintiff, for example, did not know the season of the year, recalled only 2 of 5 words after 5 minutes, completed only 2 of 4 step task, and had extremely poor insight and judgment).) The ALJ also reasonably identified inconsistencies with plaintiff's activities, including activities going beyond her engagement in exercise. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ may consider inconsistency with claimant's level of activity). Finally, an ALJ may reject "'check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina*, 674 F.3d at 1111 (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). Given the absence of any explanations provided for the check-off designations of marked and severe limitations (AR 562), the ALJ's depiction of the report from Dr. Uhl was reasonable. However, because it is also reasonable to assume the limitations assessed by Dr. Uhl derived from the MSE, the ALJ is advised to acknowledge as such on remand.

D.     Eric Papritz

Mental health provider Eric Papritz completed a report for insurance-related purposes in December 2014. (AR 554-56.) He identified mild impairment in concentration, moderate

impairment in activities of daily living, and marked impairment in social functioning and adaptation to stress. (AR 555.) Papritz opined plaintiff would be unable to perform her past job or work for a different employer doing similar work activities, and that her mental health would not improve until she receives more treatment. (AR 555-56.)

The ALJ noted Papritz is not an "acceptable medical source" pursuant to applicable Social Security regulations, and that the issue of disability is reserved to the Commissioner. (AR 29.) She found Papritz's opinion contrary to the large balance of the medical evidence, including the generally normal findings on numerous MSEs, and gave it little weight.

Plaintiff argues the ALJ mischaracterized this opinion as a general finding she was unable to work, and that the mere fact Papritz is an "other" source does not serve as a reason to reject the opinion, *see* SSR 06-3p (rescinded effective March 27, 2017). Plaintiff also downplays the significance of MSE findings.

The Court finds no error. The ALJ accurately observed that Papritz is not an acceptable medical source, but did not reject his opinion based on that characterization. The ALJ also accurately reflected that, while Papritz opined plaintiff could not return to her former or different work, the determination of whether a claimant is disabled or unable to work is ultimately reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (applicable to claims filed before March 27, 2017). The ALJ reasonably deemed the opinion of Papritz contrary to the medical evidence as a whole, including, but not limited to, MSE findings. (*See* AR 20-21.) In so doing, the ALJ provided a germane reason for rejecting this opinion evidence.

<u>Lay Witness Testimony</u>

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen*, 100

ORDER
PAGE - 13

F.3d at 1467. The ALJ can reject the testimony only upon giving reasons germane to the witness. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

The ALJ here considered lay testimony from plaintiff's significant other, J. David Gonzales, submitted on a third party function report. (AR 30, 257-64.) She described the lay statements as generally mirroring those provided in the function report completed by plaintiff. She noted the reports of Gonzales that plaintiff can "'almost always' pay attention," "has 'no problems' following written or spoken instructions[,]" and that her ability to handle stress "'can be a challenge sometimes' due to her anxiety." (AR 30, 262-63.) The ALJ concluded: "With respect to assessing the claimant's quantitative functional limitations, Mr. Gonzales' statements are accorded little weight because of their general inconsistency with objective medical evidence, including opinion evidence from acceptable medical sources indicating that the claimant is more functional than these lay statements suggest." (AR 30.)

"One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ in this case reasonably found inconsistency between the lay testimony and the medical evidence. She did not, as plaintiff avers, improperly reject the testimony based on an absence of support from "'overall medical evidence'" in the record. *Diedrich v. Berryhill*, 874 F.3d 634, 640-41 (9th Cir. 2017). The ALJ therefore provided a germane reason for assigning this evidence little weight.

An ALJ may also find the reasons for discounting a claimant's testimony equally applicable to the testimony of a lay witness. *Molina*, 674 F.3d at 1122. *See also Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting

ORDER
PAGE - 14

[the lay witness's] testimony"). In stating that the lay witness testimony mirrored that of plaintiff, the ALJ appeared to provide another germane reason for discounting the lay testimony. The ALJ also specifically took note of testimony identifying plaintiff's ability to perform certain tasks. On remand, the ALJ should take the opportunity to provide further clarification as to any and all reasons for the decision regarding lay testimony.

Steps Four and Five

Plaintiff avers step four error resulting from earlier errors in the sequential evaluation. The Court agrees the ALJ's RFC assessment could be implicated by errors in the consideration of the medical opinions. On remand, the ALJ should reconsider plaintiff's RFC and ability to perform past relevant work and/or other work at steps four and five.

Plaintiff also assigns error in relation to the telephone solicitor job identified at step five. The VE testified that, while classified as semi-skilled with a specific vocational preparation (SVP) score of 3, "as a practical matter" there were "many" entry level telephone solicitor jobs. (AR 67.) Plaintiff maintains the VE did not identify the number of unskilled telephone solicitor jobs in the national or regional economy and, instead, identified only the total number of those jobs as a general matter. However, the Court finds the VE's testimony rationally construed as providing the number of telephone solicitor jobs "remaining" after elimination of the semi-skilled positions. (*See id.* (phone solicitor job is "semi-skilled work with an SVP of 3, but as a practical matter, I think there are many entry level jobs in this occupation[,]" with "over 192,000 *remaining* in the United States and over 5,500 here in Washington.") (emphasis added).

In any event, error in reliance on the telephone solicitor job is properly deemed harmless. *Molina*, 674 F.3d at 1115 (error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine

ORDER
PAGE - 15

whether the error alters the outcome of the case.") (cited sources omitted). The ALJ found plaintiff capable of past relevant work at step four and identified two other occupations other than telephone solicitor plaintiff could perform, each with a significant number of jobs nationally. (AR 31-32 (document preparer, with 64,000 jobs nationally, and final assembler, with 32,000 jobs nationally).) *See, e.g., Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (25,000 jobs in several regions of the country constituted significant number); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (64,000 jobs nationwide constituted a significant number).)

## CONCLUSION

For the reasons set forth above, this matter is REMANDED for further administrative proceedings.

DATED this <u>3rd</u> day of August, 2018.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 16